IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BANCFIRST, Limited Guardian of the )
Estate of M.J.H., a minor, by and )
through Wes Knight, Vice President )
and Trust Officer, )
                                            Plaintiff, )
                                            )
vs. )   Case No. CIV-09-76-L
                                            )
FORD MOTOR COMPANY, a Delaware )
corporation, )
                                            )
                                     Defendant. )

# **O R D E R**

On March 11, 2007, seven-year-old M.J.H. rode her bicycle into the path of an oncoming Ford F150 pickup truck driven by Brandon Moore. Although he took evasive action, Moore was unable to avoid hitting the child, who was severely injured as a result of the impact. Plaintiff[1] brings this action for damages against the manufacturer of the truck, Ford Motor Company, alleging that the truck was unreasonably dangerous because it lacked front-wheel anti-lock brakes ("ABS").

---

[1]This action was initially filed by the child's mother, Andrea Hicks, individually and as the parent and next friend of M.J.H. On September 21, 2009, Andrea Hicks filed an assignment of her individual claims to her child and requested the court dismiss her in her individual capacity. Plaintiff's Assignment and Motion to Conditionally Dismiss with Prejudice (Doc. No. 28). The same date, Andrea Hicks filed a motion to substitute BancFirst, which had been appointed by a state court judge as the Limited Guardian of the Estate of M.J.H., as party plaintiff. Plaintiff's Motion to Substitute Party Plaintiff (Doc. No. 26). The court granted plaintiff's motion to substitute on October 23, 2009.

This matter is before the court on Ford's motion for summary judgment. Summary judgment is appropriate if the pleadings, affidavits, and depositions "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party must "set out *specific* facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The undisputed facts establish that on March 11, 2007, M.J.H. was riding her bicycle westbound on Southwest 22nd Street in Oklahoma City. Exhibit 2 to Defendant Ford Motor Company's Motion for Summary Judgment at 4 [hereinafter cited as "Motion"]. In an attempt to make a left-hand turn to go southbound, M.J.H. rode her bike onto South Portland Avenue. Id. Moore, who was driving his pickup truck in the curbside northbound lane of Portland Avenue, slammed on his brakes when he saw M.J.H. and turned his wheel hard-left in an attempt to avoid the child. Deposition of Brandon Moore at 115-16; 138-39. At that point, the truck wheels locked and the truck began to rotate in a counter-clockwise direction. Exhibit 2 to Motion at 4. The truck slid on wet pavement through the intersection at Southwest 22nd, coming to rest just north of the intersection in the southbound lanes, facing south. Id. at 6. M.J.H. was hit by the right rear corner of the truck as it passed through the inside lane of South Portland at the intersection Southwest 22nd. Id. M.J.H. was thrown from her bicycle and sustained serious injuries.

On behalf of M.J.H., plaintiff has brought suit against Ford under theories of negligence and manufacturers' products liability. Plaintiff contends that the truck was defective because it was not equipped with front-wheel ABS in addition to rear-wheel ABS. To establish liability under the theory of manufacturers' products liability, plaintiff must demonstrate three elements.

> First of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.

> Secondly, Plaintiff must prove that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control. . . . .
>
> Thirdly, Plaintiff must prove that the defect made the article unreasonably dangerous to him or to his property.

Kirkland v. General Motors Corp., 521 P. 2d 1353, 1363 (Okla. 1974). Likewise, to prevail on a negligence cause of action, plaintiff must show "(1) the existence of a duty on the part of defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." Sloan v. Owen, 579 P.2d 812, 814 (Okla. 1977). Thus, under either theory, plaintiff must demonstrate that the lack of front-wheel ABS caused the accident.

In support of its contention that the failure to equip Moore's truck with ABS on all four wheels[2] caused the accident, plaintiff offers the opinion of William Medcalf, a registered professional engineer. During his deposition, Medcalf testified as follows:

> Q. In this accident, then, if this vehicle had four wheel ABS, what would have happened in your opinion?
>
> A. We have an unknown here. In my opinion, the presence of four wheel ABS would have allowed Mr. Moore to steer the vehicle and more likely than not, he would have missed [M.J.H.]. The unknown is exactly when did he apply his counter steer.

---

[2]There is no dispute that the vehicle was only equipped with rear-wheel ABS.

4

> Q. Is that what you are talking about when you say that he would have steered and missed her?
>
> A. Well, he would have been able to steer. He did crank the wheel back to the right. Okay. It is far enough back to the right that in that yaw slide, with functional ABS on the front wheels, the front wheels would likely have come back up to speed and he would have been able to get some steering force, he should have been able then to – He would have been able to steer probably in front of [M.J.H.].
>
> Q. But you don't know that for a fact?
>
> * * *
>
> A. It depends on when he puts his steer in.
>
> * * *
>
> Q. You can't state with a reasonable degree of engineering certainty or probability that with four wheel ABS that this vehicle still would not have hit [M.J.H.] with some portion of the vehicle?
>
> * * *
>
> A. Basically what I told you is that you are correct. He counter steered somewhere in the skid. We don't know where. But had he counter steered and had the full ABS, he would have had much better ability and much better probability of avoiding [M.J.H.].

Deposition of William Medcalf at 103-04. Thus, during his deposition, plaintiff's expert conceded that he could not testify to a reasonable degree of engineering certainty that the alleged defect – lack of all-wheel ABS – caused the accident in this case. Expert testimony in this regard is crucial to plaintiff's case as the efficacy and

5

functionality of anti-lock braking systems are not within the understanding of ordinary jurors. *See* Nash v. General Motors Corp., 153 P.3d 73, 75 (Okla. App. 2006) (where effect of alleged defect is "beyond a jury's ordinary knowledge and common experience, expert witness testimony was the best evidence of general causation.").

In an effort to avoid summary judgment, plaintiff presents an affidavit by Medcalf that contradicts this prior testimony. Contrary to Medcalf's testimony that he could not determine when Moore initiated a counter steer to the right, Medcalf now asserts:

> Because Mr. Moore's attention was already in a heightened state and his hands were on the steering wheel, his response time to the yaw, resulting in the initiation of the right steer, would have approximated one-half second.
>
> (A) The counter-steer would have been initiated between position "7" and "6" on the defense expert's reconstruction diagram.

Declaration of W.E. Medcalf, Jr. At ¶ 3. Yet this new and extremely precise opinion about the timing of the alleged counter steer is based on data Medcalf had reviewed prior to his deposition. In addition, under the guise of correcting his deposition transcript, Medcalf attempts to change his actual testimony through an errata sheet. For example, during his deposition, Medcalf testified "[t]he unknown is exactly when did he apply his counter steer." Deposition of William Medcalf at 103: 9. In his errata sheet, Medcalf continues this answer by inserting "however, it is known that his counter steer was applied prior to striking [M.J.H.] and in time to avoid striking

6

her." Exhibit 3 to Plaintiff's Response to Defendant Ford Motor Company's Motion for Summary Judgment at 1 [hereinafter cited as "Plaintiff's Response"]. This additional language and the new opinions expressed in his December 9, 2009 declaration are diametrically opposed to Medcalf's prior statements under oath that he did not know when Moore initiated the alleged counter steer. *See* Deposition of William Medcalf at 103: 4-9; 104: 10-12; and 105: 15-16.

While Rule 30(e) of the Federal Rules of Civil Procedure permits corrections to deposition transcripts, it does not permit wholesale changes to sworn testimony.[3] Indeed, the Court of Appeals for the Tenth Circuit takes a restrictive view of the changes that can be made pursuant to this provision.

> We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony. *See, e.g., Coleman v. Southern Pac. Transp. Co.*, 997 F. Supp. 1197, 1205 (D. Ariz. 1998) (discrediting deposition testimony directly contradicted by errata sheet); *S.E.C. v. Parkersburg Wireless, L.L.C.*, 156 F.R.D. 529, 535 (D.D.C.

---

[3]Rule 30(e) provides that

> [o]n request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e)(1).

1994) (noting modern trend in which courts do not allow a party "to make any substantive change she so desires" in deposition testimony); *Rios v. Bigler*, 847 F. Supp. 1538, 1546-47 (D. Kan. 1994) (stating that the court will consider only those changes which clarify the deposition, and not those which materially alter it); *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (suppressing deponent's attempt to rewrite material answers given in deposition); *Barlow v. Esselte Pendaflex Corp.*, 111 F.R.D. 404, 406 (M.D.N.C. 1986) (refusing to consider changes to deposition that were made in bad faith). Of all these courts, perhaps the *Greenway* court expressed the purpose and scope of Rule 30(e) best:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, *i.e.*, he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Greenway*, 144 F.R.D. at 325.

Garcia v. Pueblo Country Club, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002).

A review of the alterations sought by Medcalf indicates they are the type of changes the Tenth Circuit finds suspect. The errata sheet and his declaration are replete with changes that contradict Medcalf's prior sworn testimony. For example, Medcalf now attempts to alter his testimony that he could not quantify the braking inputs or steering inputs initiated by Moore, including the timing thereof. His

proposed changes at page 180 of his deposition transcript represent perhaps the most egregious example. In response to questions whether he could tell "the time period that elapsed between the steering maneuver and the first braking maneuver" or "the hard braking maneuver", Medcalf responded with a simple "No." Deposition of William Medcalf at 179: 23-25; 180: 1-3. In his errata sheet, however, Medcalf now embellishes on that answer to include the following: "But if you are talking about whether or not I can quantify whether the braking and steering inputs with 4-wheel ABS brakes were sufficient to at least have resulted in the truck having avoided hitting [M.J.H.], I can and have determined such braking and steering inputs were sufficient to have caused the truck to have missed [M.J.H.]." Exhibit 3 to Plaintiff's Response at 2-3. This is not a clarification; this is a substantive change that is diametrically opposed to the answer given during the deposition. Moreover, although Medcalf states that his new answers are clarifications to the record, there is no indication that he was confused during the deposition. That Medcalf treated the deposition like a take home examination is clear not only from his proposed changes, but also from the timing of the errata sheet, which appeared only after Ford moved for summary judgment based on the damning testimony Medcalf gave during his deposition.[4]

---

[4]Medcalf was deposed on October 14, 2009 and the court reporter transmitted the transcript on October 22, 2009. Exhibit 3 to Defendant Ford Motor Company's Reply Brief in Support of Motion for Summary Judgment. Medcalf did not execute his errata sheet or transmit it to the reporter until December 1, 2009. Exhibit 3 to Plaintiff's Response at 3. It was thus untimely under the rules. *See* Fed. R. Civ. P. 30(e)(1). Moreover, there is no indication in the record that, before the deposition was completed, plaintiff or Medcalf requested his opportunity to review the transcript.

The court finds Medcalf's errata sheet and December 9, 2009 declaration are merely an attempt to create a sham factual issue to avoid summary judgment. They are thus disregarded and the court is left with a failure of proof on plaintiff's part. Plaintiff has no competent evidence that the accident would not have occurred had Moore's truck been equipped with four-wheel ABS. It thus has no evidence that the alleged defect caused the accident and the subsequent injuries to M.J.H. Defendant is therefore entitled to summary judgment in its favor.

In sum, Defendant Ford Motor Company's Motion for Summary Judgment (Doc. No. 57) is therefore GRANTED. In light of this ruling, Defendant Ford Motor Company's Motion for Protective Order (Doc. No. 24) and Plaintiff's Unopposed Motion to File Supplement to Pretrial Report to Correct Inadvertent Omission (Doc. No. 85) are DENIED as moot. The court retains jurisdiction to rule on Plaintiff's Motion to Require Defendant to Pay Expert Fees (Doc. No. 74) if that motion is not resolved by the parties within thirty days of the date of this order. Judgment in favor of defendant will issue accordingly.

It is so ordered this 21st day of December, 2009.

*[signature: Tim Leonard]*
TIM LEONARD
United States District Judge

---

See Rios v. Bigler, 67 F.3d 1543, 1552 (10th Cir. 1995).