IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BANCFIRST, Limited Guardian of the )
Estate of M.J.H., a minor, by and )
through Wes Knight, Vice President )
and Trust Officer, )
)
                                Plaintiff, )
)
vs. )    Case No. CIV-09-76-L
)
FORD MOTOR COMPANY, a Delaware )
corporation, )
)
                              Defendant. )

## **O R D E R**

This matter arises out of an accident that occurred on March 11, 2007. On that date, seven-year-old M.J.H. rode her bicycle into the path of an oncoming Ford F150 pickup truck driven by Brandon Moore. Although he took evasive action,[1] Moore was unable to avoid hitting the child, who was severely injured as a result of the impact. On January 16, 2009, a complaint was filed seeking damages against the manufacturer of the truck, Ford Motor Company. The complaint alleged the truck was unreasonably dangerous because it lacked front-wheel anti-lock brakes ("ABS").

On December 21, 2009, the court entered an order granting defendant's motion for summary judgment. The court found that "plaintiff's expert conceded

---

[1] Moore testified he turned the wheel 100 percent to the left and applied his brakes hard. Deposition of Brandon Moore at 115-16, 139.

during his deposition that he could not testify to a reasonable degree of engineering certainty that the alleged defect – lack of all-wheel ABS – caused the accident in this case." Order at 5 (Doc. No. 86). The court disregarded the expert's subsequent affidavit and the errata sheet to his deposition, finding they were "merely an attempt to create a sham factual issue to avoid summary judgment." Id. at 10. As plaintiff had no competent evidence that the alleged defect caused the accident, the court found defendant was entitled to summary judgment on plaintiff's negligence and product liability claims. Judgment in favor of defendant was entered on December 21, 2009. On May 13, 2010, the court entered an order denying plaintiff's motion to alter or amend.

Plaintiff appealed, and on April 18, 2011, the Court of Appeals for the Tenth Circuit affirmed in part, reversed in part, and remanded this matter for further proceedings. The Court affirmed this court's decision to disregard the errata sheet and declaration submitted by Medcalf, finding that they "substantially qualify his prior statements, and thus make precisely the sort of substantive changes of which we disapprove." BancFirst v. Ford Motor Co., Case No. 10-6137, slip op. at 6 (10th Cir. Apr. 18, 2011). The Court, however, reversed the entry of summary judgment in favor of defendant, finding that portions of Medcalf's unaltered deposition created a sufficient question of fact to preclude judgment in defendant's favor. Id. at 7-8. The

Court remanded the case to this court for further proceedings, including resolution of defendant's *Daubert*[2] challenge to Medcalf's testimony.

The admissibility of an expert's testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The rule imposes two requirements before proffered testimony can be deemed admissible. First, the expert must be qualified to testify on the proposed subject matter. "To qualify as an expert, [the witness is] required to possess 'such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.'" Lifewise Master Funding v. Telebank, 374 F.3d 917, 928 (10th Cir. 2004) (citations omitted). Second, the testimony must concern scientific or specialized knowledge that will assist the jury in understanding or determining a fact in issue. *See* Daubert, 509 U.S. at 592.

---

[2]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). Defendant did not file a separate *Daubert* motion; rather, the *Daubert* challenge was included in defendant's motion for summary judgment. *See* Defendant Ford Motor Company's Motion for Summary Judgment and Brief in Support at 11-18 (Doc. No. 57).

With respect to the qualification prong, it is not sufficient that the witness has qualified as an expert in the past. This is because "when assessing expert testimony, 'the question before the trial court [i]s specific, not general.'" Id. (*quoting* Kumho Tire Co. V. Carmichael, 526 U.S. 137, 156 (1999). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995). *See also* Ralson v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001) ("merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue.").

If the court determines that the proffered expert is qualified, the court must then determine whether the expert's opinions are reliable. "In reviewing whether an expert's testimony is reliable, the trial court must assess the reasoning and methodology underlying the expert's opinion." United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir.), *cert. denied*, 549 U.S. 968 (2006) (citations and quotations omitted). In making this determination, the court may consider a number of factors including

> (1) whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of

>     the technique or theory when applied; (4) the existence
>     and maintenance of standards and controls; and (5)
>     whether the technique or theory has been generally
>     accepted in the scientific community.

Fed. R. Evid. 702 advisory committee note (2000). In addition, the court may consider whether the expert's opinion was developed just for purposes of testifying, or whether such opinion is the result of research independent of the litigation. Moreover, lack of reliability may be shown by an expert's "unjustifiably extrapolat[ing] from an accepted premise to an unfounded conclusion". Id. Plaintiff, as the proponent of Medcalf's testimony, bears the burden of establishing the admissibility of his testimony and opinions. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir.) (*en banc*), *cert. denied*, 130 S. Ct. 54 (2009). At this stage of the proceedings, however, the court does not address the weight or persuasiveness of Medcalf's proposed opinions; the court's focus is on the methodology he employed to reach his conclusions rather than on the correctness of the conclusions themselves. Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1233 (10th Cir. 2004), *cert. denied*, 546 U.S. 926 (2005).

As the court must assess Medcalf's qualifications in light of the specific matters on which he proposes to testify, the court's analysis begins with his opinions. At the June 1, 2011 hearing, plaintiff clarified that it seeks to present Medcalf to offer the following three opinions from his expert report:[3]

---

[3]Medcalf's expert report does not comply with Fed. R. Civ. P. 26(a)(2)(B) because it does contain his qualifications, a list of his publications, a list of other cases in which he testified as an

> It is my opinion that, to a reasonable degree of engineering certainty, that (sic) the driver of the subject F150 turned the steering wheel to the right – "into the turn" – after perceiving that the vehicle was in a yaw slide.
>
> * * *
>
> It is my opinion that, to a reasonable degree of engineering certainty, had the vehicle been equipped with a four-wheel antilock brake system, it is more likely than not that Mr. Moore would have regained steering capability as he turned the wheels back to the right, allowing him to avoid a collision with [the child].
>
> * * *
>
> It is my opinion that, to a reasonable degree of engineering certainty, Ford did not provide adequate warnings and instructions as it relates to 2 wheel and 4 wheel ABS brakes and the differences between the functions and how each system affects the handling of the vehicle.

Plaintiff's Exhibit 37 at 2, ¶¶ 3, 5, 9. Based on the standards enunciated above, the court finds plaintiff has failed to sustain its burden of demonstrating that Medcalf is qualified to render these opinions. Moreover, even if the court were to find Medcalf qualified to render the first two opinions, plaintiff has not established the reliability of those opinions.

At the *Daubert* hearing, Medcalf testified that he received a bachelor of science degree in mechanical engineering with an emphasis in aircraft design in the early 1960s. Thereafter, he worked for the auto industry until 1981. Early in his

---

expert in the previous four years, and a statement of the compensation to be paid him. Fed. R. Civ. P. 26(a)(2)(B)(iv)-(vi).

career, he completed work for a masters degree in mechanical engineering with a broad emphasis in structures, combustion, and gas dynamics. The majority of his work for the auto industry concerned chassis and power train components. For approximately three and a half years in the early 1970s, Medcalf was the brake system design and release engineer at the Pontiac Motor Division. This position required that he be generally familiar with the design of component parts, but he did not participate in the design or testing of brake systems. Medcalf's first experience with four-wheel ABS on automobiles occurred in 1974 when he was allowed to test-drive a vehicle equipped with a European system. During the 1974 test drive, Medcalf focused on the ABS's effect on the stability of the car; he did not test the effect on braking distance. Medcalf testified that his only other experience with four-wheel ABS besides the test drive 37 years ago is from driving his own vehicle. He conceded that he has never worked on designing any anti-lock braking system. Medcalf has published no papers on braking systems, much less any on four-wheel ABS, or the reaction time of drivers. During the hearing, he was unable to recall if he had ever testified regarding braking systems during his thirty year career as a consultant.

Plaintiff presented no evidence that Medcalf is qualified to offer an opinion on the adequacy of Ford's warnings and instructions. In fact, in his deposition, Medcalf conceded that he did not consider himself an expert on the preparation of owner's manuals. There is nothing in Medcalf's skills, experience or training that would point

7

to his being qualified to opine on the instructions that should be given to purchasers of vehicles. Likewise, the court finds Medcalf is not qualified to opine on human reaction times or the effect of ABS. Though Medcalf is a degreed mechanical engineer and has worked in the auto industry, he was only peripherally involved with braking systems for a short time and none of his experience – save the 1974 test drive – concerned ABS. Medcalf admits he never worked on designing anti-lock brake systems and, indeed, Medcalf left the auto industry years before four-wheel ABS became widely available in the United States.[4] Moreover, the fact that Medcalf has some familiarity with ABS and is himself a driver are not sufficient to qualify him to offer opinions about how Moore and the vehicle in this case reacted.

Moreover, the court finds Medcalf's opinions that Moore turned the steering wheel to the right early in the yaw slide and that the accident would not have occurred if the truck had been equipped with four-wheel ABS are not reliable as neither opinion is based on any methodology. Medcalf's ultimate opinion that four-wheel ABS would have prevented the accident is dependent on Moore having counter-steered during the yaw slide *before* the child was hit. Medcalf, however, admitted there is no physical evidence when any counter-steer may have occurred, and he conducted no tests to determine even if a counter-steer was feasible in circumstances like the accident in this case, that is whether a driver could steer to

---

[4]According to Medcalf, four-wheel ABS was not offered as standard equipment on even high-end vehicles until 1992, eleven years after he left the auto industry.

the right after having steered hard to the left and braking.[5] Medcalf bases his opinion that Moore did in fact execute a counter-steer and the timing of that counter-steer solely on Medcalf's own driving experience, observation of others, and what he believes drivers are taught. While an expert's testimony can be based solely on experience, when that is the case the expert "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (2000) (*quoted in* Nacchio, 555 F.3d at 1258). Medcalf, however, did not provide this explanation. Moreover, plaintiff presented no evidence that the driver in this case was taught to turn into a skid or that he would have done so given that a child was in his lane of travel. In addition, Medcalf was unable to cite any studies or data that would suggest what drivers do when trying to avoid a person in the street, and plaintiff presented no evidence that Medcalf has any expertise in human reactions. Although Medcalf relies on what he calls the "man in the street study" for average response times for drivers, he does not know how that study was conducted. Regardless, "[t]he requirements of *Daubert* are not satisfied by casual mention of a few scientific studies, which fail to demonstrate that an expert's conclusions are grounded in established research, recognized in the scientific

---

[5]Medcalf conducted no tests, but rather relied on tests performed by Robert Marc Hooker. There is no dispute that Hooker's testing was not designed to replicate the accident as the road surfaces were different and the test facility did not provide room to execute a hard left steer followed by a counter-steer. Deposition of William Medcalf at 140-41. Moreover, Medcalf testified that he relied on Hooker's tests "[o]nly to verify my opinion that with front ABS, she would be able to reverse the yaw slide or reduce the rate of the yaw." Id. at 156.

community, or otherwise accepted as scientific knowledge." Rodriguez-Felix, 450 F.3d at 1126. Moreover, Medcalf conducted no tests to quantify, confirm, or even determine if there was sufficient time in this situation to execute the maneuvers on which his ultimate opinion lies. Rather than methodology, Medcalf offers simply the "*ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). This is not sufficient.

In sum, the court finds plaintiff has not sustained its burden of establishing the admissibility of the testimony of William Medcalf. The court is thus left with a failure of proof on plaintiff's part. Plaintiff has no competent evidence that the accident would not have occurred had Moore's truck been equipped with four-wheel ABS. Indeed, Medcalf candidly admitted that even with four-wheel ABS, he cannot say that the vehicle would not have hit the child. Plaintiff therefore has no evidence that the alleged defect caused the accident and the subsequent injuries to M.J.H. Defendant is therefore entitled to judgment in its favor. Judgment in favor of defendant will issue accordingly.

It is so ordered this 6th day of June, 2011.

_____
TIM LEONARD
United States District Judge